**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **GIDDY HOLDINGS, INC.,** | § | |
| | § | |
| **PLAINTIFF/ COUNTER-** | § | |
| **DEFENDANT,** | § | |
| | § | **Civil Action No. 1:20-cv-00434-LY** |
| **VS.** | § | |
| | § | |
| **ERNEST KIM,** | § | |
| | § | |
| **DEFENDANT/ COUNTER-** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BRETT JACOBSON,** | § | |
| | § | |
| **COUNTER-DEFENDANT** | § | |

**GIDDY HOLDING'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Giddy Holdings, Inc. hereby files this Motion for Summary Judgment under

Fed. R. Civ. P. 56 and in support respectfully offers the following:

## I.    SUMMARY

Defendant, a former Giddy employee, admittedly copied and then deleted Giddy's

confidential information from his company laptop and e-mail account.  Defendant's actions took

place after his employment had been terminated and were taken without authorization.

Defendant's testimony is clear that he intentionally took these affirmative steps to destroy Giddy's

property.  Further, Defendant's actions continue to result in damages to this day.

Because Defendant's own testimony, coupled with the testimony of Giddy's CEO and

Chief Technology Officer establish every element of Giddy's claims, summary judgment is proper.

## II.      STATEMENT OF FACTS

### A.      Giddy Hires Defendant Pursuant To An Employment Agreement

Giddy is a medical device company that sells FDA-Registered Class II medical devices treating erectile dysfunction.  *Decl. of B. Jacobson* at ¶ 3 (hereinafter "Ex. C").  On March 2, 2020, Giddy hired Defendant as Chief Marketing Officer to provide leadership and management to all of Giddy's marketing efforts.  *Id.* at ¶ 6; *Ernest Kim (Def.) Dep.*, Dec. 18, 2020, 75:8-11 (hereinafter "Ex. B").  Defendant was specifically hired to introduce new marketing plans for the company, reassess the existing ones, and lead a marketing team of at least four current Giddy employees. *Dep. of B. Jacobson*, July 1, 2021, 111:7-17 (hereinafter "Ex. A"); Ex. C at ¶ 4.

As a condition of his employment, Defendant signed a Giddy employee handbook and employment agreement, which contained several employment and post-employment provisions, including confidentiality, non-disclosure and non-disparagement provisions.  Ex. B at 75:1-7; 120:12-121:9; Ex. C at BJ-3.  This employment contract governed the terms of Defendant's employment.  Ex. B at 75:1-7; Ex. C at ¶ 6, BJ-3.

### B.      Defendant Is Given Extensive Access To Giddy's Proprietary And Confidential Information .

Giddy has developed its particular business information, including marketing plans, pricing forecasts, and financial modeling with significant time and effort.  Ex. C at ¶ 8.  In his role as Chief Marketing Officer, Defendant was given extensive access to and responsibility for several activities to facilitate Giddy's legitimate business efforts:  (i) managing Giddy's existing marketing efforts and plans, (ii) enacting new and creative marketing plans, (iii) directly overseeing Giddy's communication and public relations efforts, (iv) overseeing Giddy's database of current customer contact information, and (v) managing Giddy's marketing team.  Ex. C at ¶ 7.  Defendant was also given extensive access to Giddy's detailed financial and operational information, including details

about sales, advertisements, marketing strategies and potential hires.  Ex. A at 142:9-25; Ex. B at 113:24-114:21; 115:21-116:25; Ex. C at ¶ 7.

### C.    Defendant's Employment Is Terminated One Month Later.

On April 3, 2020, Defendant entered Giddy CEO, Brett Jacobson's office and explained to Jacobson that he was experiencing symptoms analogous to known coronavirus symptoms and that he needed to depart immediately.  Ex. A at 59:23-60:2**.**  Defendant explicitly stated to Jacobson that his symptoms had only just begun occurring.  *Id.*  Upon his departure, however, Defendant posted on Slack – the company-wide messaging platform – that he had had a "Body ache, headache and fever since 4:50am this morning**.**"  Ex. A at 60:22-23; Ex. C at ¶ 9.  This statement, naturally, sent the entire Giddy staff into a tailspin, since they had been working closely with Defendant not only during the recent few days, but also those very few hours between his arrival in the office and his departure due to the claimed symptoms.  Ex. C at ¶ 9.  Defendant's Slack message directly contradicted his prior statements to Jacobson, as well, regarding the onset of his symptoms.  *Id.;* Ex. A at 59:23-60:23.

On April 6, 2020, Giddy notified Defendant that, effective immediately, his employment with the company was terminated.  Ex. B at 185:16-24, Ex. B-14.  In the same notification, Giddy also demanded that Defendant return Giddy's property that remained in his possession, namely a laptop, computer charging cord, computer mouse, and keys.  *Id.*  Giddy provided Defendant three business days to return such property.  *Id.*

### D.    Defendant's Tweets With False & Defamatory Information About Giddy.

On April 5, 2020, Defendant posted numerous messages to Twitter, via his Twitter handle @erniekim75, which were targeted specifically to journalists and current Giddy investors.  Defendant only had this information due to his receipt of Giddy's confidential information and high-level marketing position.  Ex. A at 166:1-15; 178:6-179:1.  Defendant's tweets claimed to

have a story about a "certain unnamed company" that committed "SEC fraud, fraud with PPP (government funding), forcing employees to come to work despite Covid 19 lockdown and wrongful termination because Asian people created Covid 19."  Ex. A at 178:21-179:10; Ex. B at 197:18-198:2, 205:9-208:12.

After discovering Defendant's Twitter posts threatening the company, Giddy immediately sent to Defendant a Cease and Desist Letter.  Ex. B at 208:17-209:3, Ex. B-16The letter demanded that Defendant remove his threatening Twitter posts within twenty-four (24) hours from receipt, and reminding him of his employment and post-employment obligations. *Id*.

Giddy's efforts were not fast enough to prevent Defendant's false and defamatory tweets from being seen by multiple Giddy investors.  Ex. A at 75:15-76:6, 139:7-139:19; Ex. C at ¶ 17.  Giddy lost investments, totaling at least $300,000 that were pending as a direct result of the false tweets.  Ex. A at 75:15-76:6, 139:7-139:19; Ex. C at ¶ 17.

### E.    Defendant *ADMITTEDLY* Copies And Permanently Deletes Giddy's Data.

After several attempts to by Giddy to get its property, Defendant did eventually return Giddy's property - well after the requested deadline.   Ex. B at 185:16-187:12.  Before returning the property, Defendant had completely "wiped clean" the computer by deleting every single piece of information that was on the computer as well as all company emails and correspondence.  Ex. A at 126:9-127:8; 141:22-143:6; 145:12-146:3; Ex. C at ¶¶ 13-15; *Decl. of R. Bulkiewicz* at ¶¶ 5-6, 9-10 (hereinafter "Ex. D"); *Decl. of T. Carden* at ¶¶ 5-6, 8-9 (hereinafter "Ex. E").  Defendant also took screenshots of marketing emails and data that he was able to access from his cell phone.  Ex. B at 14:22-16:3.

This "wipe" was no innocent mistake or attempt to remove personal photos as Defendant claimed.  Ex. D at ¶¶ 5-6, 9-10.  Defendant disabled and/or deleted certain company software

installed on his company computer in order to "wipe" the computer blank. Ex. A at 126:9-127:8; 141:22-143:6; 145:12-146:3; Ex. D at ¶ 7; Ex. E at ¶¶ 7-8.   There were no files remaining on Defendant's Giddy laptop or on Giddy's shared file system when Defendant returned it. Ex. D at ¶ 10; Ex. E at ¶¶ 8-9.[1]  Included in the deleted and/or transferred files were copies of Giddy's trade secrets and electronically stored communications, as well as contracts that Defendant entered into on Giddy's behalf.  Ex. A at 126:9-16; 176:11-177:4; Ex. C at ¶¶ 13-15.  Defendant also deleted all of the data that Giddy relied upon to develop advertisements and track purchases.  Ex. A at 126:17-127:1.  This data was deleted across all Giddy platforms, not just Defendant's computer.  *Id;* Ex. D at ¶¶ 5-6, 10-11; Ex. E at ¶¶ 5-6, 9-10.  The extent of Defendant's actions are discovered almost daily.  Ex. C at ¶ 15.

**F.     Giddy Is Unable To Recover Deleted Documents, Data And Trade Secrets.**

Defendant's unauthorized actions continue to reverberate through Giddy today.  Ex. A at 127:19-128:3.  Giddy spent thousands of dollars and man hours trying to recover the information but has been unable to retrieve any of the documents, email or other meaningful data that was deleted and "wiped" from the laptop, including its own confidential and trade secret information. Ex. A at 191:9-192:1; Ex. D at ¶ 10; Ex. E at ¶ 10.  The data and documents that were deleted cost Giddy over $200,000 to recreate.  Ex. A at 126:17-127:8; Ex. C at ¶ 14.  But the total cost of Defendant's sabotage is much higher because Defendant also deleted all files related to contracts he entered into on behalf of Giddy without authorization. Ex. A at 127:19-128:3; 128:19-23; Ex. C at ¶ 15.  Giddy only realized that the contracts exist when vendors contacted Giddy demanding payment.  *Id.* Because the documents deleted cannot be recovered, the reach of Defendant's actions

---

[1]     Defendant's assertion that there were no files on the laptop to delete because he never saved files locally is incorrect.  *See generally, Doc*. 47, Def. Motion for Summary Judgment.  Documents produced in discovery in this case demonstrate that Defendant saved them locally on his computer before uploading them into the cloud.  Ex. D at ¶ 9.

is unknown.  *Id.* Giddy has had several accounts go into collections on account of contracts that Defendant entered into without authorization, and then deleted all evidence of, after he was terminated.  *Id.*  One recent advertising company sought over $40,000 from Giddy for contracts that Defendant entered into without authorization, and that Giddy had no idea existed until collections came calling.  Ex. A at 131:5-132:1.

Thus far, the total amount of known damage caused by Defendant's actions totals nearly $1.2 million dollars.  *Id;* Ex. A at 135:13-25.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Summary Judgment Standard

Summary judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A plaintiff moving for summary judgment satisfies its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law.  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994*); San Pedro v. United States,* 79 F.3d 1065, 1068 (11th Cir. 1996); *Jacquez v. Compass Bank*, EP-15-CV-26-RFC, 2016 WL 3017418, at *5 (W.D. Tex. May 24, 2016).  If the plaintiff carries its burden, the defendant must either (1) adduce sufficient evidence to raise a genuine issue of fact as to at least one element of the plaintiff's claim or (2) adduce sufficient evidence to raise a genuine fact issue as to every element of an affirmative defense.  *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

Giddy has brought seven claims against Defendant: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), (2) violation of Tex. Civ. Prac. & Rem. Code § 143.001 (Harmful Access by a Computer Act, or "HACA"), (3) breach of contract, (4) libel per se, (5) trade secret misappropriation, (6) breach of fiduciary duty, and (7) conversion.  *Doc.* 1.  As the evidence has

conclusively established each element of each claim, summary judgment is proper and the Court should grant Giddy's Motion.

**B.      Defendant Violated The CFAA When He Accessed Giddy's Computers After His Employment.**

The CFAA provides a civil cause of action to anyone who suffers a loss as a result of a statutory violation.  18 U.S.C. § 1030(g).  A person violates the CFAA if he (i) intentionally accesses a protected computer; (ii) without authorization or by exceeding authorization; (iii) to obtain anything of value; (iv) knowingly and with intent to defraud; and (v) causes a loss of at least $5,000 to one or more persons during a 1 year period.  *See* 18 U.S.C. § 1030(a); 18 U.S.C. §1030(c)(4)(A)(i)(1); and 18 U.S.C. § 1030(g); *see also Doc. 1* at ¶ 32.  Because the evidence conclusively establishes each element of the CFAA, summary judgment for Giddy is proper.

*1.  Defendant intentionally accessed Giddy's computers without authorization.*

Defendant admits that he 1) accessed his Giddy email post-termination to take screenshots of his emails, and 2) accessed his Giddy laptop post-termination.  Ex. B at 14:22-16:3; 190:13-18**.**  Defendant also attempted to login to Giddy's cloud based systems with his Giddy credentials post-termination.  Ex. D at ¶ 12.  Accordingly, there is no question that Defendant intentionally accessed Giddy's computer.  18 U.S.C. § 1030(a)(2)(C).

The CFAA requires proof that Defendant's actions were without authorization or exceeded authorization.  18 U.S.C. § 1030(a)(2).  The Act does not define "without authorization" but it has been held to mean "without sanction or permission" or when previously given permission has been rescinded.  *See Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 759 (6th Cir. 2020), *cert. denied sub nom. Royal Truck & Trailer Sales v. Kraft*, 20-575, 2021 WL 2405157 (U.S. June 14, 2021); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016); *United States v. Nosal*, 844 F.3d 1024, 1038 (9th Cir. 2016), *Cf., Hunn v. Dan Wilson Homes*, Inc.,

789 F.3d 573, 583 (5th Cir. 2015) (CFAA claim failed because defendant was still employed).  Put another way, "without authorization" can be established when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access. *United States v. John*, 597 F.3d 263, 273 (5th Cir. 2010)

Defendant accessed Giddy's computer post-termination without authorization.  Defendant admits that when he accessed Giddy's computers, he had already been terminated and fully acknowledges that his access was "cut off".  Ex. B at 189:1-190:1 (testimony regarding Giddy emails on Defendant's phone post termination); 190:13-18, 192:3-11 (testimony regarding use of Giddy laptop post termination).  Defendant received a cease and desist and demand for return of property that left no question about his lack of authorization.  Ex. B at B-13, B-14 and B-16; *see also* Ex. B at 179:17-180:10**.**  Moreover, Defendant's own pleadings admit that he "access[ed] the MacBook laptop after his termination" and he that Defendant's access was done with the "intent … to remove" information. *Doc. 47* at ¶ 25.

## 2.   *Defendant obtained things of value when he accessed Giddy's computers without authorization*

The CFAA next requires that Giddy establish Defendant obtained things of value when he accessed their computers without authorization.  18 U.S.C. § 1030(a)(4).  Courts have held that under the CFAA, a "thing of value" is determined relative to one's needs and objectives.  *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1062 (S.D. Iowa 2009), *citing United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997).  Examples of "things of value" under the CFAA include 1) confidential customer and financial data, 2) company spreadsheets and 3) proprietary trade secrets and confidential information   *See* respectively, *Four Seasons Hotels and Resorts B.V. v. Consorcio Barr, S.A.*, 267 F.Supp.2d 1268 (S.D.Fla. 2003), *affirmed in part, reversed in part* 138 Fed.Appx. 297, 2005 WL 850304, *rehearing and rehearing en banc denied* 163 Fed.Appx.

849, 2005 WL 2487946; *Artino*, 638 F. Supp. 2d at 1062; and *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202 (N.D.N.Y. 2010).

The deposition testimony of Brett Jacobson, Giddy's CEO, establishes that when Defendant accessed the Giddy laptop post-termination and performed the "factory reset", the entire computer (including Giddy's data) was wiped clean. Ex. A at 145:12-146:3. Giddy's confidential and proprietary information, developed over the years at great cost, including vendor contracts, ad-buys, and marketing data, was deleted locally (off the computer itself) and from Giddy's shared drives. Ex. A at 126:9-127:8; 141:22-143:6. Once Defendant deleted this information from his laptop, it was deleted across the entire Giddy organization and unrecoverable. Ex. D at ¶¶ 5-6, 10-11; Ex. E at ¶¶ 5-6, 9-10.

       *3.*      *Defendant's actions were knowing and made with the intent to defraud.*

Next, under the CFAA, Giddy must establish that Defendant's actions were done knowingly and with the intent to defraud, which "simply means wrongdoing and not proof of the common law elements of fraud." *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc*., 119 F. Supp.2d 1121, 1126 (W.D. Wash. 2000); *Genesco Sports Enterprise, Inc. v. White*, Civ. A. No. 3:11-CV-1345-N, 2011 WL 6593415, at *5 (N.D. Tex. Oct. 27, 2011). It is enough if Giddy can show that Defendant accessed its systems after he knew his access was terminated. *Multiven, Inc. v. Cisco Sys., Inc*., 725 F. Supp. 2d 887, 894 (N.D. Cal. 2010) (finding summary judgment appropriate when the evidence establishes the defendant knowingly accessed former employer's systems).

Defendant admits he accessed his Giddy emails and laptop after he was terminated, despite clear and specific direction to the contrary. Ex. B at 189:1-190:1 (testimony regarding Giddy emails on Defendant's phone post termination); 190:13-18, 192:3-11 (testimony regarding use of

Giddy laptop post termination).   The testimony of Giddy's Chief Technology Officer further demonstrates that Defendant's actions were not some small misunderstanding or innocent attempt to remove his Apple ID.   First, in order to "wipe" the computer -- as Defendant admits he did -- he would have had to deliberately disable software and access points on his computer.   Ex. D at ¶ 7; Ex. E at ¶ 7.   Doing so would delete all data, both locally and across all of Giddy's shared drives—permanently.   *Id.*   Defendant testified that he never created documents locally, but we also know this to be false based on the documentary forensic record.   *Id.*   Put simply, Defendant knew what he was doing, and did it to maximize impact.

  *4.  Giddy has been damaged by Defendant's actions*

  The CFAA requires that the plaintiff sustain damages, meaning any impairment to the integrity or availability of data, a program, a system or information that causes loss aggregating at least $5,000.00 in value during any one-year period to one or more individuals. 18 U.S.C. § 1030(e)(8)(A). Giddy has incurred in excess of $5,000.00 in damage assessment and remedial measures during a single one-year period in connection with its efforts to stop and remediate Defendant's wrongful conduct.   Ex. C at ¶¶ 14-16.

  When Defendant accessed Giddy's laptop post-termination and performed the "factory reset", it resulted in a loss of data, including information about advertising spends and contracts, that cost Giddy "hundreds of thousands of dollars."   Ex. A at 146:3; Ex. C at ¶ 14.   Jacobson provided detailed and lengthy explanations for why Defendant's actions resulted in such significant harm to Giddy's operations, including the fact that collections agencies are still reaching out to Giddy to collect on contracts entered into, and then deleted by, Defendant.   Ex. A at 126:9-127:8; 130:14-131:1; 141:22-143:6; Ex. C at ¶¶14-16.

These expenses have been recognized as sufficient to satisfy the damage element of the CFAA. *See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.,* 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004) (recognizing "damage assessment and remedial measures" due to defendant's unauthorized activities as counting towards the $5,000 requirement); *Shurguard Storage Ctrs.,* 119 F. Supp. 2d at 1126 (citing Senate Report for the proposition that "loss" can include the expense of resecuring a secure system after an intruder has accessed the system).  Giddy has established every element of its CFAA through Defendant's own testimony and the uncontroverted summary judgment evidence.  Therefore, summary judgment is proper.

### C.      Defendant Admittedly Violated The Harmful Access By A Computer Act.

The Harmful Access by a Computer Act provides a civil cause of action against a person who violates Ch. 33.02(a) of the Texas Penal Code. Tex. Civ. Prac. & Rem. Code §143.001; Tex. Penal Code Ch. 33.02(a).   Chapter 33.02(a) of the Texas Penal Code provides that a person commits an offense if they 1) knowingly access a computer, 2) without consent of the owner.  *Id.* The injured owner is then entitled to bring a civil action under Section 143.001 if the bad actor's conduct was knowing or intentional. Tex. Civ. Prac. & Rem. Code §143.001.  Defendant's own undisputed testimony, as recited above, demonstrates Defendant violated both the criminal and civil requirements of the Act.

Defendant testified that he knowingly and intentionally accessed Giddy's computers, including a laptop and email accounts stored on his cell phone, after he had been terminated, his access to Giddy accounts suspended, and ordered to return Giddy-owned property.  Ex. B at 179:17-180:10; 185:16-187:12; 189:1-190:1; 190:13-18, 192:3-11; Ex. B-13, B-14 and B-16.

It is further undisputed that Giddy was injured by Defendant's actions, because 1) an owner is injured when the penal code is violated, and 2) Giddy incurred hundreds of thousands of dollars

in damages due to Defendant's bad acts.  *See* Ex. C at ¶¶14-16; Section B(4), *supra*.  Thus, summary judgment is appropriate.

**D.      Defendant Breached His Contract With Giddy.**

Summary judgment on Giddy's breach of contract claim is warranted as Defendant's own testimony establishes he breached his employment contract with Giddy, and the deposition testimony of Jacobson establishes the damages resulting from the breach.

*1.   Defendant admits he breached his employment contract with Giddy.*

When Defendant started working for Giddy, he signed an employment contract that contained confidentiality, non-disclosure, non-disparagement, and post-employment provisions. Ex. B at 75:1-7; 120:12-121:9; Ex. C at BJ-3.  It is undisputed that Defendant signed this agreement and agreed to be bound by it. *See e.g., Doc.* 47 at Ex. A, ¶¶ 9-10.  By way of this contract, Defendant agreed to:

- Not disparage Giddy and refrain from publishing any "oral or written statements about the Company" that would put Giddy in a bad light;
- Not use or disclose Giddy's confidential information; and
- Upon separation, return company property, and not remove, retain or use any company information, or copy, delete or alter company information.

Ex. C at BJ-3, ¶ 2, 5.

The evidence establishes that Defendant breached his employment agreement when he published messages on the Twitter platform, including messages directed at Giddy investors, casting Giddy in a negative light (to put it mildly). Ex. C at BJ-4.  These tweets include accusations that Giddy forced employees to come to work despite shelter in place orders, threatened to sue employees who had COVID, racially discriminated against employees, and committed actual fraud. *Id.*

When he signed his employment contract, Defendant agreed not to publish any negative "oral or written statements" *about* Giddy.  Ex. C at BJ-3.  Texas case law is clear that disparagement and defamation can be found even when the statements at issue do not directly refer to the plaintiff.  It is not necessary that the plaintiff be named if those who knew and were acquainted with the plaintiff understand from reading the publication that it referred to plaintiff.  *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 289–90, 339 S.W.2d 890, 894 (1960); *accord Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216 (D.C.Cir.) ("To satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed."), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999).  There is no doubt that Defendant was referring to Giddy in his tweets, and Defendant admitted as much during his deposition.  Ex. B at 205:9-208:12.  The plain language of Defendant's tweets establish he breached his non-disparagement obligations under his employment contract.

Defendant further breached his employment agreement using confidential and proprietary information (the identity of Giddy's investors) to directly attack the company.  Ex. A at 178:21-179:10; Ex. B at 197:18-198:2, 205:8-12, 207:7-15.  The names of Giddy investors were confidential and not disclosed to the public.  Ex. A at 179:4-10.  Defendant only knew to direct his tweets to Mark Cuban (@mcuban) and Metta World Peace (@MettaWorld37) because of the knowledge he gained during the course of his employment.  Ex. A at 178:6-179:10; Ex. B at 197:18-198:2, 205:8-12, 207:7-15.

   2. *Giddy suffered damages as a result of Defendant's breach.*

Giddy's damages related to Defendant's breach of his post-employment obligations (as to the laptop computer and cell phone data) are discussed above*,* and incorporated herein by

reference.  In addition to those substantive damages, which alone are enough to establish Giddy's damages element for breach of contract, Giddy has provided evidence of damages directly related to Defendant's breach of the non-disparagement agreement via the published tweets.  Ex. A at 75:15-76:6 (investor pulled back $300,000 in funding due Defendant's Twitter comments and the potential consequences); 139:7-139:19; Ex. C at ¶ 17 (prior investor stopped investing as a result of Defendant's statements).  Giddy has affirmatively established competent evidence of damages for its breach of contract claim and summary judgment is proper.

**E.**    **Giddy Is Entitled To Summary Judgment On Its Libel *Per Se* Claim.**

A communication is considered libel per se when it is so obviously hurtful to the person aggrieved that no proof of its injurious character is required to make it actionable. *Clark v. Jenkins*, 248 S.W.3d 418, 437 (Tex.App.—Amarillo 2008, pet. denied), *cert. denied*, 558 U.S. 815, 130 S.Ct. 52, 175 L.Ed.2d 21 (2009); *Houseman v. Publicaciones Paso Del Norte, S.A. DE C.V*., 242 S.W.3d 518, 524 (Tex.App.—El Paso 2007, no pet.). A false statement will typically be classified as defamatory per se if it injures a person in his office, profession, or occupation; *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex.App.—Houston [1st Dist.] 2006, no pet.); charges a person with the commission of a crime; *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); or imputes to him a loathsome disease. *Bolling v. Baker*, 671 S.W.2d 559, 570 (Tex.App.—San Antonio 1984, no writ).  Defendant's tweets meet all these criteria.  Ex. C at BJ-4.

*1.   The statements at issue are about Giddy and allege crimes.*

First, as an initial matter, an allegedly defamatory statement does not have to mention the plaintiff in order to be actionable.  *Matthews*, 161 Tex. at 289–90, *accord Croixland* , 174 F.3d at 216 (D.C.Cir).  A publication may clearly defame the plaintiff and yet on its face make no reference to him.  *Davis v. Davis,* 734 S.W.2d 707, 711 (Tex.App.—Houston [1st Dist.] 1987, writ red' n.r.e.); *Outlet Co. v. International Sec. Grp.,* 693 S.W.2d 621, 626 (Tex.App.—San Antonio, 1985,

14

write ref'd n.r.e).  It is not necessary that every listener understand the reference, as long as there are some who reasonably do.  *Davis,* 734 S.W.2d at 711; *Outlet Co.,* 693 S.W.2d at 626.

Here, Defendant—the Chief Marketing Office of Giddy at the time—was tweeting at Giddy investors, making serious allegations of fraud and discrimination.  Ex. C at BJ-4.  It would be clear to anyone reading the tweets with knowledge of Defendant and who he worked for that Defendant was talking about Giddy.  It was not too complicated a mystery for several of Giddy's investors to figure out and withdraw funding.  Ex. A at 75:15-76:6; Ex. B at 139:7-139:19.

Second, the statements clearly allege crimes, namely SEC fraud, PPP fraud and racial discrimination:



Ex. C at BJ-4.  Fraud is a crime, and statements that falsely allege crimes are *per se* defamatory. *Leyedecker,* 683 S.W.2d at 374 (Tex. 1984); *KTRK TV, Inc. v. Robinson,* 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Christy v. Stauffer Publ'ns, Inc.,* 437 S.W.2d 814, 815 (Tex. 1969).

Defendant made defamatory and disparaging statements about Giddy to the public and its investors, whereby he alleged Giddy committed fraud and discrimination.  The evidence to support

these facts are in Defendant's own testimony, where he admits he made the statements, to Giddy's

investors, about Giddy[2].

**F.      Defendant Misappropriated Giddy's Trade Secrets.**

> *1.  Uncontroverted evidence demonstrates Defendant misappropriated Giddy's trade secrets.*

The elements of trade secret misappropriation are 1) plaintiff owned a trade secret, 2) that

the defendant misappropriated, and 3) caused plaintiff damages.  Tex. Civ. Prac. & Rem. Code §

134A, *et seq.*  First, Defendant admits that Giddy owned trade secrets, including marketing efforts,

customer lists, pricing and financial structures, and business operations models.  *See generally,*

*Doc.* 47, at ¶ 43.  There is no dispute on this element.

Further, the evidence conclusively establishes Defendant misappropriated Giddy's trade

secrets in no less than three different ways.  First, when Defendant performed the "factory reset"

of Giddy's computer, Giddy's information, including vendor contracts, ad-buys, and marketing

data, was deleted locally (off the computer itself) and from Giddy's shared drives.  Ex. A at 126:9-

127:8; 141:22-143:6; Ex. D at ¶¶ 5-6, 10; Ex. E at ¶¶ 5-6, 8-9.  Second, Defendant's own testimony

establishes he accessed marketing data and emails from his Giddy email account, post-termination.

Ex. B at 14:22-16:3; 189:1-190:1; 190:13-18, 192:3-11.  Third, Defendant admitted to publicly

reaching out to Giddy's investors (knowledge of whom he gained through his access to Giddy's

trade secrets) on Twitter.  Ex. A at 178:21-179:10; Ex. B at 197:18-198:2, 205:8-12, 207:7-15.

> *2.  Giddy has established damages for Defendant's trade secret misappropriation.*

The deposition testimony of Brett Jacobson is clear that Giddy suffered discrete, pecuniary

harm as a result of Defendant's post-employment actions, including deleting data and tweeting

---

[2]      To the extent the Court finds any merit in Defendant's anticipated argument that these statements are not *per se* defamatory and thus Giddy must show evidence of damages, Giddy points the court to Jacobson's testimony on the subject.  Ex. A at 75:15-76:6, 139:7-139:19.

false accusations of fraud and discrimination.  Ex. A at 75:15-76:6; 126:9-127:8; 139:7-139:19; 141:22-143:6.   Jacobson's affidavit also establishes the extensive damages resulting from Defendant's actions.  Ex. C at ¶¶ 14-18.  Because Giddy (and Defendant's own testimony) has established that Defendant misappropriated Giddy's trade secrets, summary judgment is proper.

### G.      Defendant Breached His Fiduciary Duty To Giddy.

In order to establish its breach of fiduciary duty claim, Giddy must show: 1) that the parties had a fiduciary relationship, 2) Defendant breach his fiduciary duty to Giddy, and 3) Giddy suffered damages.  *First United Pentecostal Ch. v. Parker,* 514 S.W.3d 214, 220 (Tex. 2017).  All elements are satisfied and summary judgment is proper.

*1.   Giddy has satisfied its elements of breach of fiduciary duty.*

As an employee of Giddy, Defendant has a fiduciary duty to Giddy not to disclose its trade secrets.  *Johnson v. Brewer & Pritchard, P.C.* 73 S.W.3d 193, 202 (Tex. 2002); *Wooters v. Unitech Int'l,* 513 S.W.3d 754, 762-63 (Tex. App.—Houston [1st Dist] 2017, pet denied).  As discussed above, the evidence in this case, including direct testimony from Defendant, establishes that Defendant did just that.  Section III(F), *supra;* Ex. A at 126:9-127:8; 141:22-143:6; 178:21-179:10; Ex. B at 14:22-16:3; 197:18-198:2, 205:8-12, 207:7-15.

*2.   Giddy has established damages as a result of Defendant's breach of fiduciary duty.*

In order to satisfy the damages element of a fiduciary claim, Giddy may show some injury to it *or* some benefit to the Defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). (emphasis added). Furthermore, damages in cases involving trade secrets can take a variety of forms. *Southwestern Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581, 608 (Tex. App.—Tyler 2013). The methods used to calculate damages associated with trade secrets include the value of plaintiff's lost profits, the defendant's actual profits from use of the secret, the value

of the trade secret, or the developmental costs the defendant avoided by the misappropriation. *Id*. at 608-609.

In particular, courts may measure damages by measuring the value of the misappropriated trade secret to the defendant, expressed as the benefits, profits, or advantages gained by the defendant as a result of the misappropriation. *See id*. at 609. The law looks to the time when the misappropriation occurred to determine what the value of the misappropriated secret would be to a defendant. *Id*. Furthermore, a lack of profit from his misappropriation and use of the secret does not exempt the wrongdoer from his liability in the amount of the trade secret's value when it was misappropriated. *Id*. The evidence adduced to date, at a minimum, establishes at least a scintilla of evidence as to both Giddy's lost profits and the value of the secrets to the Defendant.

When Defendant was terminated, he surreptitiously deleted data and attempted to cause investors to pull funding.  Giddy was forced to spend countless hours, and spend countless dollars, righting the ship—efforts that still continue to this day. Ex. A at 126:9-127:8; 130:14-131:1; 141:22-143:6; Ex. C at ¶¶ 14-18.  Accordingly, Giddy has satisfied the elements of its breach of fiduciary duty claim because it has submitted competent summary judgment evidence demonstrating both harm to Giddy and benefit to Defendant.

## H.    Summary Judgment Is Proper On Giddy's Conversion Claim.

Summary judgment is proper on a claim for conversion if Giddy can establish that 1) it owned, possessed, or had the right to immediate possession of property, 2) Defendant wrongfully exercised dominion or control over the property, and 3) Giddy suffered injury.   *Lawyers Title Co., v. J.G. Cooper Dev., Inc.* 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied). Because Defendant concedes elements 1 and 2, Giddy need only establish element 3, injury, in order to succeed on summary judgment.  *See Doc.* 47 at ¶¶ 53-54.

Unauthorized copying of another party's confidential information or trade secrets can support a claim for conversion in Texas. *In re Simons Broad., LP,* CIV. W-11-CA-172, 2013 WL 9542015, at *1 (W.D. Tex. Nov. 19, 2013). Specifically, where the property at issue in a conversion claim is essentially information, and not only a tangible item, a claim for conversion is proper if the plaintiff can show that the defendant intended to use the information in a manner that excluded or was inconsistent with the plaintiff's rights. *Id.; Cuidad Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Services*, LLC, 404 S.W.3d 737, 749 (Tex. App.—El Paso 2013, no pet.). Here, as outlined in more detail above, Defendant accessed his work computer and work emails without authorization after he was terminated, proceeded to copy and delete Giddy's confidential and proprietary information in violation of the confidentiality obligations he owed Giddy under his employment agreement. Thus, Defendant unquestionably used the information he accessed in a manner inconsistent with Giddy's rights under the employment agreement.

Because Giddy owned and had the right to immediate possession of its property that Defendant held—including a laptop, AND the information contained therein—and Defendant wrongfully exercised dominion or control over it by deleting the information and refusing to return said property, Giddy has been damaged by Defendant's conversion and summary judgment is proper.

## CONCLUSION

For these reasons, Plaintiff Giddy Holdings, Inc., respectfully requests that the Court grant its Motion for Summary Judgment, and grant Plaintiff any and all relief to which it may be justly entitled.

Respectfully submitted,

COKINOS │ YOUNG

*/s/ M. Wilson Stoker*
M. Wilson Stoker
State Bar No.  24076806
Lauren S. Aldredge
State Bar No. 24079380
900 S. Capital of Texas Highway
Las Cimas IV, Suite 425
Austin, Texas 78746
Tel. (512) 615-8573
Fax: (512) 610-1184
wstoker@cokinoslaw.com

**ATTORNEYS FOR PLAINTIFF,
GIDDY HOLDINGS, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing document was served via ECF on the 12th day of August 2021, to the following counsel of record:

Casey S. Erick
Cowles & Thompson, P.C.
901 Main Street, Suite 3900
Dallas, Texas 75202
cerick@cowlesthompson.com
*Attorneys for Defendant*

*/s/ M. Wilson Stoker*
M. Wilson Stoker