# United States District Court

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| GIDDY HOLDINGS, INC. | § § § § § § § § § § § § | |
| Plaintiff/Counter Defendant, | | |
| v. | | CIVIL ACTION NO. 1:20-cv-00434 |
| ERNEST KIM, | | |
| Defendant/Counter Plaintiff. | | |

## UNSWORN DECLARATION OF ERNEST KIM

1. My name is Ernest Kim. I am over the age of eighteen, have never been convicted of a felony, and am otherwise competent to make this Declaration. I understand that all statements made in this Declaration are sworn to by me under the penalty of perjury. All statements contained in this Declaration are within my personal knowledge and are true and correct.

2. I have read the allegations and statements in Defendant's Motion for Summary Judgment and state that they are true and correct and within my personal knowledge.

3. Giddy Holdings, Inc. ("Giddy") manufactures and sells erectile dysfunction treatments for men. Brett Jacobson ("Jacobson") is the Founder and CEO of Giddy.

4. Jacobson is the CEO and Founder of Giddy Holdings.

5. Jacobson personally recruited me for the position of Chief Marketing Officer at the headquarters in Austin, Texas. On February 17, 2020, Jacobson offered me the position of Chief Marketing Officer. Jacobson sent me an Offer of Employment Letter.

6. The Offer Letter also included a table which explained the potential compensation package as for potential compensation up to $2,601,052.

**EXHIBIT A**

7. On February 20, 2020, Brett Jacobsen ("Jacobsen"), Founder and CEO of Giddy, sent a reply email to me stating that the changes were approved. The reason for the changes was so that I would get the bonus from December 1, 2019 through February 28, 2020.

8. The Offer Letter stated that my employment start date was contingent on Giddy's completion of a satisfactory reference check. However, Jacobsen also said "we don't do background or reference checks."

9. Giddy also conditioned my employment on signing the employee handbook. Giddy told me that it was a routine document that everyone signed.

10. I signed the handbook and started my employment with Giddy on March 2, 2020.

11. Giddy provided me with a MacBook laptop in connection with my employment.

12. All documents in connection with my job performance were saved on and accessed through Google Doc, which is a cloud-based platform. The documents were not saved on the laptop.

13. My company email was set up by Giddy and accessed through Gmail, a cloud based platform.

14. The documents given to me by Giddy, that I accessed on the laptop in connection with my job responsibilities, were copies of originals held by Giddy. I never deleted or transferred any copies of Giddy documents.

15. In March 2020, the Covid-19 pandemic hit. Jacobson frequently blamed me, an Asian-American, and all other Asians for causing the Covid-19 virus. In addition, Jacobson was making false accusations that I lied on my resume about previous employment (General Motors). My W2s have been turned over to Giddy to prove my earnings from General Motors.

DocuSign Envelope ID: EC76313D-58D4-4DA8-8845-0D0EE61EA017

16. During that time, Jacobson solicited me to help with applying for the Paycheck Protection Program ("PPP) Loan. Jacobson to inflate the number of Giddy employees on the application to obtain a higher loan amount. I voiced my concern to Giddy and objected to this course of action and refused to participate.

17. In late March 2020, I became ill.

18. On April 3, 2020, Giddy's general counsel emailed me, demanded I be tested for Covid-19, and I was ordered to stay away from the office. After I received this email, I realized I did not have access to the Giddy server. Giddy informed me that I was terminated.

19. On April 4, 2020, I procured a Covid-19 test from Dallas Testing Center. I informed Taune, from Giddy's human resources. Ultimately, my test results returned negative.

20. On April 6, 2020, Giddy's general counsel sent an email to me saying I was fired because my "resume and job application included both false information and misleading representations." Specifically, Giddy said that I was never employed with General Motors.

21. Giddy's claim that I provided false information and misleading representations in my resume and job application is not true. Since this suit was filed, I have provided records which confirm my employment at General Motors. However, Giddy still maintains that I lied about working at General Motors.

22. Additionally, on April 6, 2020, Giddy demanded I return the laptop and other equipment in three (3) days. Because I was still under quarantine pursuant to Dallas County shelter in place Order, I could not return the laptop without contacting other people. I informed Christopher Clark by email. I planned to return the equipment after my test results and quarantine period ended. I fully intended to comply and never refused to comply.

23. I received correspondence from Giddy threatening me with legal action if I did not return the laptop. Therefore, I broke my quarantine on April 13, 2020 to mail back to equipment via Fed Ex. I produced the receipt. I fully complied with Giddy's demand and returned everything requested. I never refused to return the laptop.

24. After my termination, I did not transfer, delete or hide any data, information or company emails from Giddy. I never altered Giddy's computer system or computer network in any way. I never disabled any computer software of Giddy at any time.

25. I did not have access to nor could I delete any trade secret information, including emails, from the laptop. To date, I am unaware of what information, if any, Giddy claims as a "trade secret."

26. After my termination, I did access the laptop to unlink my personal Apple ID from the laptop. I did not access the laptop to obtain information from Giddy, continue working for Giddy, or to misappropriate or disclose information of Giddy. In order to unlink my Apple ID, I had to perform a factory reset of the laptop which returned it to the state it was provided to me, without my Apple ID.

27. After my termination, I realized my company email through Giddy was still on my Apple iPhone email app. I removed the email account from my phone. The removal of the account from my phone did not delete any emails from the account. I did not delete any emails from the account. My access to the email account had already been disconnected.

28. When I performed the reset, no Giddy documents, information, or my email were deleted because that information is saved on Google Docs and Gmail platforms, not the hard drive of the laptop.

29. After my termination, my access to Giddy platforms was blocked.

30. I never intended to defraud Giddy at any time during my employment or after my employment.

31. I never had access to Giddy social media platforms. I never posted on Giddy social media platforms through Giddy's accounts. I never tagged Giddy in any personal social media post I made.

32. I never threatened to reveal false or confidential information about Giddy. I never typed Giddy's name in any social media post.

33. From March 2, 2020 to the date of my termination, I diligently worked and met or exceeded all expectations. Because of my performance, I was earned and was entitled to the quarterly bonuses and the annual bonus. Giddy never paid me any earned commissions and bonuses. In addition, Giddy owes me other payments and benefits exceeding $11,000.00.

34. This Declaration is made in accordance with my sworn deposition testimony.

35. Nothing in this Declaration contradicts the objective documents submitted in connection with this Motion.

I, Ernest Kim, declare under penalty of perjury that the statements set out in this Declaration are true and correct.

Executed in __Dallas__ County, Texas, on __Wednesday__, April __21__, 2021.

*Ernest Yoon Kim*
―13F655B26F9E409
Ernest Kim
Declarant