United States District Court
WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| GIDDY HOLDINGS, INC. | § | |
| | § | |
| Plaintiff/Counter Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-00434 |
| | § | |
| ERNEST KIM, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE TO COUNTER-DEFENDANT BRETT JACOBSON'S MOTION TO STRIKE SECOND AMENDED COUNTERCLAIM, OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant/Counter-Plaintiff ERNEST KIM ("Kim") files this his Response to Counter-Defendant Brett Jacobson's ("Jacobson") Motion to Strike Kim's Second Amended Counterclaim, or in the alternative, Motion to Compel Arbitration for the fraud counterclaims made against Jacobson [Doc. 67]. Counter-Plaintiff alleges the following:

## II.
## BACKGROUND

1. On July 2, 2021, this Court entered an Order Modifying In Part But Otherwise Adopting Report and Recommendation ("Order"). [Doc 61]. For the purposes of Jacobson's Motion to Strike and this Response, in pertinent part, the Order responded to Kim's Objections to the Report and Recommendation stemming from this Court's consideration of Jacobson's Motion to Dismiss Kim's Counterclaims for Fraud [Docs. 60, 53, and 56].

2. The Order granted Kim leave to amend his fraud counterclaim against Jacobson on or before July 23, 2021. [Doc. 61, p. 7]. In accordance with the Order, Kim timely filed his Second

Amended Counterclaims Against Brett Jacobson on July 23, 2021. [Doc. 65]. Kim acknowledges the Court allowed Kim to amend his fraud counterclaim against Jacobson to the extent it relates to ""the details of [his] termination'" because the defects were "salvageable." [Doc. 61, p. 14].

3.  Jacobson has not filed an Answer in this case. Jacobson proceeded to file this his Motion to Strike Kim's Second Amended Counterclaims, or in the alternative, Motion to Compel Arbitration.

4.  No arbitration agreement has been entered into by Jacobson and Kim. Although the Order from the Court does state that any counterclaims Kim asserted against Giddy, including for fraud, would be subject to arbitration, the Court specifically distinguishes Giddy from Jacobson by name when discussing application of the arbitration agreement before the Court and that Jacobson was not automatically included because he had made no such request for arbitration at that time.

## III.
## ARGUMENTS AND AUTHORITIES

**A. Rule 12(f) Motion to Strike is Improper Vehicle to Challenge Counterclaims**

5.  Jacobson does **not** state the grounds on which he brings his Motion to Strike. Kim can only assume, by title and on its face, since Jacobson did not timely file an answer to Kim's counterclaims, it is pursuant to Rule 12(f). Kim asserts Rule 12(f) allows the court to strike from any pleading (1) an "insufficient defense" or (2) "any redundant, immaterial, impertinent of scandalous matter." Fed. R. Civ. P. 12(f)(2). Neither of those two situations apply to the counterclaims at issue before this Court. Yet, Jacobson confusingly, through a Motion to Strike, seeks to strike all of Kim's Counterclaims as untimely even though all fraud claims were allowed to be repleaded with respect to the details of Kim's termination through previously granted leave.

6.  Should Jacobson take issue with the sufficiency of the claims pleaded, a Motion to Strike is the improper vehicle. Federal courts have widely stated that "even a properly made motion to

strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Conn v. United States*, 823 F. Supp. 2d 441, 442 (S.D. Miss. 2011); *NexBank, SSB v. Bank Midwest, N.A.*, 2012 U.S. Dist. LEXIS 135350, *1 (N.D. Tex. 2012)(plaintiff failed to show any portion of defendant's answer or counterclaims contained an insufficient defense or otherwise). Moreover, these motions should not be granted "absent a showing of prejudice." *Id*. Here, Jacobson has failed to identify or show how the counterclaims should be dismissed in connection with Rule 12(f) and what prejudice, if any, would be suffered from counterclaims filed pursuant to court Order.

    **B. Kim's Second Amended Counterclaim for Fraud Against Jacobson Complies with the Order**

7.    Jacobson argues that Kim's Second Amended Counterclaims for fraud should be stricken in their entirety because allegedly some factual statements made are believed to be outside the limitations of the Order from the Court and that none of the allegations relate to details of Kim's termination. Jacobson further argues some of the allegations contain representations purportedly made by Giddy's general counsel, Christopher Clark, not Jacobson himself. This is simply not the case, and Jacobsen generally takes issue with the counterclaims themselves without specificity.

8.    The Order specifically addresses what representations made by Jacobson were connected to the details of Kim's termination by incorporation of a paragraph from Kim's Objections [Doc. 61, p. 13]. The paragraph in question contains representations regarding the nature of three things (1) Jacobson's racially discriminatory statements to Kim related to COVID-19, (2) Kim's objection to Giddy Holding's misrepresentations related to payroll numbers and the federal government, and (3) Jacobson's representations/falsities related to Kim's employment history. [Doc 61, p. 13].

9.    Jacobson attempts to strike the counterclaim by mischaracterizing and a narrowing "interpretation" [Doc. 67, ¶41] the nature of the Second Amended Counterclaims. First, Kim's

allegation regarding his pre-employment communications with Jacobson go directly to the details of his termination because those statements were continued misrepresentations throughout Kim's employment and, in part, directly relate to the details of Kim's termination. Kim complied with the Order to particularly and specifically establish the extent of fraudulent representations made by Jacobson, and that necessarily must include pre-employment statements that were made to Kim which were false.

10. Second, Jacobson attempts to strike the counterclaim in its entirety by asserting that one paragraph, paragraph 29, in Kim's Second Amended Counterclaims were actually made by Giddy Holding's general counsel, Christopher Clark, not Jacobson. Kim would point out that paragraph 29 is included in the Statement of Facts portion of the pleading, not the actual cause of action for fraud. Moreover, as the pleading shows, Kim asserts Jacobson is responsible for Christopher Clark's letter detailing falsities about Kim's prior employment history. The details of the letter from Clark do not automatically exclude Jacobson as the one who originally made the fraudulent statements. In fact, earlier in the pleading, Kim establishes where the details of the letter came from. Paragraph 19 clearly states "Jacobson would make outlandish and belligerent accusations that Kim lied on his resume…" [Doc 65, p. 5]. The fact that Clark wrote the letter detailing Jacobson's representations, not Clark's, does not absolve Jacobson of wrongdoing, nor is it grounds to strike the counterclaim in its entirety since it fully complies with the Order and directly relates to the details of Kim's termination.

11. Third, Jacobson attempts to strike Kim's counterclaim in its entirety apparently due to paragraphs 22-27 of Kim's Second Amended Counterclaims because they relate to the "PPP loan issue again." [Doc. 67, ¶41]. Again, Kim would point out that paragraphs 22-27 are included in the Statement of Facts portion of the pleading, not the actual cause of action for fraud. However,

Kim asserts it was necessary to provide the specific and particular factual background to describe the nature of the PPP loan misrepresentations to show that the objection made by Kim was reasonable and to further show the full nature of why Kim's objection led to, in part, his termination. The factual background is necessary for Kim to meet the standard required from the Court in its Order. The Order explicitly identified Kim's objection to the payroll records misrepresentations with respect to PPP loan funding as tied to the "details of [his] employment." [Doc 61, p. 13]. Providing all information known, pursuant to the rules and this Court's instruction was compliance with the Order.

12.     Kim complied with this Court's Order, and all causes of action pleaded are related to the details of his termination. Therefore, no portion of the Second Amended Counterclaims should be stricken, and Kim respectfully requests that this Court deny Jacobson's Motion to Strike.

    **C.  Kim Made Timely Amended Counterclaims Against Jacobson Pursuant to the Order Which Does Not Require Compliance with Fed. R. Civ. P. 15(a)**

13.     Indeed Fed. R. Civ. P. requires leave of court to amend should the pleading not be made as a matter of course. Fed. R. Civ. P. 15(a)(1)(2). However, the Court's Order explicitly granted Kim leave to amend his counterclaim of fraud against Jacobson by July 23, 2021.

14.     The Court's Order relieves Kim from seeking leave of court as to the counterclaims because the pleading full complies with the Order. Jacobson does not identify any paragraph within in a cause of action in Kim's Second Amended Counterclaims that does not comply with this Court's Order. Therefore, the Motion to Strike Kim's Second Amended Counterclaims as Untimely is improper and should be denied in its entirety.

    **D.  Arbitration Cannot Be Transferred to Jacobson Through Corporate Veil Theory Because Causes of Action are Brought Against the Individual.**

15. The Order from the Court details the two-step process for analyzing whether certain counterclaims in this lawsuit should be subject to arbitration. [Doc 61, p. 15-17]. Though Kim acknowledges the Court, in that particular instance, was analyzing the arbitration agreement Kim had with Giddy Holdings, Kim does not agree the Court's determination that arbitration would be applicable to Kim's counterclaims of fraud against Giddy Holding's would, by implication, extend to Jacobson. Kim understood any fraud claim against Giddy would be covered by their arbitration agreement as the type of claim eligible for arbitration. Kim does not agree its counterclaim for fraud against Jacobson is subject to any analysis of the type of claim to be arbitrated because no agreement exists to allow engagement of such analysis.

16. Jacobson posits that arbitration is imputed onto Jacobson because Kim alleges Jacobson (1) engaged in misconduct related to the contract or (2) should Kim pierce the corporate veil, then Jacobson was acting as the alter ego of Giddy at all times. [Doc. 67, p. 4]. However, not all the claims for fraud against Jacobson relate to the contract of employment. These claims are wholly made against Jacobson, the individual. Despite this, Jacobson believes this is enough to compel arbitration as to Jacobson and Kim.

17. First, as the Order states, the first step is to determine whether the parties agreed to arbitrate. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). There is no agreement to arbitrate between Kim and Jacobson, as the Court acknowledges the only arbitration agreement is between Giddy and Kim. [Doc. 61]. Jacobson does not provide any agreement in its Motion to Compel Arbitration because there is not one. Further the Court made clear that only an amended counterclaim against Giddy would be subject to mandatory arbitration. [Doc. 61, p. 17]. Therefore, the motion to compel must be denied because Jacobson cannot get past the first step of legal

analysis for claims against him, the individual, and cites to no relevant authority that would allow Jacobson to substitute himself into the arbitration agreement between Giddy and Kim.

18. Second, Jacobson argues that because Kim alleges a veil piercing theory, the non-signatory to an arbitration agreement can compel arbitration when parties relied on the contract terms. Jacobson cites *Kramer v. Toyota*, wherein the 9th Circuit Court of Appeals determined, in applying California state law, that "where a non-signatory [Jacobson] seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221, 92 Cal. Rptr. 3d 534 (2009) (quoting *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1713, 1 Cal. Rptr. 3d 328 (2003)), [**16] and (2) [*1129] when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota Motor Corp.,* LEXIS 2090, (9th Cir. 2013). The Court states simply referencing an arbitration agreement without explaining connectedness of claims or reliance on the contract is "not enough." *Id*. Jacobson cites to no cases regarding Texas law or on point 5th Circuit cases.

19. Here, Jacobson does not address the fact that Kim seeks to, in part, utilize the corporate veil theory to rid Jacobson of hiding behind the protections of the corporate entity and allow him to be held responsible for the individual, personal fraudulent misrepresentations he made in his own capacity, separate from Giddy. Jacobson merely references the arbitration agreement without more, and that is not enough to compel arbitration with a non-signatory to an agreement. Jacobson

also ignores the causes of action brought against Jacobson for fraudulent actions/representations he made in his individual capacity that were not in reliance on the terms of any contract as specified in Kim's Counterclaims and were not the actions of Giddy itself. Without further proof from Jacobson, there is no evidence that Jacobson should be bound by the arbitration clause as an alter-ego on all fraud counterclaims. *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, LEXIS 63686, *9-10, (W.D. Tex. 2009); also see *In re Trammel,* 246 S.W.3d 815, 820 (Tex. App.--Dallas 2008, no pet.) ("[A] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement.")."*Id*. Kim does not seek by his fraud claim to derive a direct benefit from the contract for employment itself. *Id*.

20. The 5th Circuit states a party seeking to compel arbitration "must first show that a valid arbitration agreement exists between the parties" whereby "the parties intent controls even when a non-signatory to the arbitration agreement seeks to enforce it." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 527 (5th Cir. 2019). Jacobson has done no such thing.

## IV.
## CONCLUSION AND PRAYER

WHEREFORE, Defendant/Counter Plaintiff Ernest Kim respectfully requests that upon hearing, the Court (1) deny Jacobson's Motion to Strike and (2) deny Jacobson's Motion to Compel Arbitration and (3) grant Defendant all other relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

COWLES & THOMPSON, PC

By: *[signature: Casey S. Erick]*
Casey S. Erick
Texas Bar No. 24028564
Email: cerick@cowlesthompson.com

901 Main Street
Suite 3900
Dallas, Texas 75202
Tel. (214) 672-2138
Fax. (214) 672-2338

**ATTORNEY FOR DEFENDANT ERNEST KIM**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2021, a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept the electronic filing.

By: *[signature]*

Casey Erick