UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GIDDY HOLDINGS, INC., | § | No. 1:20–CV–434–DAE |
| | § | |
| Plaintiff / Counter-Defendant, | § | |
| | § | |
| vs. | § | |
| | § | |
| ERNEST KIM, | § | |
| | § | |
| Defendant / Counter-Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| BRETT JACOBSON, | § | |
| | § | |
| Counter-Defendant. | § | |
| _____ | § | |

ORDER MODIFYING IN PART BUT OTHERWISE
ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation ("R&R") filed by

Magistrate Judge Mark Lane ("Judge Lane" or the "Magistrate Judge") on March

9, 2022.  (Dkt. # 79.)  All pretrial motions in this case were referred to Judge Lane.

(Dkt. # 28.)  The R&R pertains to four of the five[1] pending motions in this case.

(Dkts. ## 47, 66, 67.)  Notice of the R&R was sent to the parties on March 9, 2022.

_____

[1] This R&R does not pertain to Defendant / Counter-Plaintiff Ernest Kim's Motion
in Limine.  (Dkt. # 77.)

(Dkt. # 79.)  Objections were due within fourteen (14) days after being served with a copy.  On March 23, 2022, Defendant / Counter-Plaintiff Ernest Kim ("Kim") timely filed Objections to the Magistrate Judge's R&R ("Objections").  (Dkt. # 80.)  No other party timely filed objections.

The Court finds its review of the R&R suitable for disposition without a hearing.  After careful consideration, and for the reasons given below, the Court **MODIFIES IN PART BUT OTHERWISE ADOPTS** the Magistrate Judge's R&R.  (Dkt. # 79.)

<u>LEGAL FRAMEWORK</u>

The Court must conduct a *de novo* review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).  Findings to which no specific objections are made do not require *de novo* review; instead, the Court need only determine whether the R&R is clearly erroneous or contrary to law.  <u>United States  v. Wilson</u>,

2

864 F.2d 1219, 1221 (5th Cir. 1989).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

<u>DISCUSSION</u>

Kim objects to Judge Lane's findings that (1) Plaintiff / Counter Defendant Giddy Holdings, Inc., ("Giddy") is entitled to summary judgment on its Computer Fraud and Abuse Act (CFAA) and Texas Harmful Access by Computer Act (THACA) claims; (2) Giddy is entitled to summary judgment on its breach of contract claim; (3) Giddy is entitled to summary judgment on its libel per se claim; (4) Giddy is entitled to summary judgment on its trade secret misappropriation and breach of fiduciary duty claims; and (5) Counter Defendant Brett Jacobson's ("Jacobson") motion to strike Kim's Second Amended Counterclaims should be granted.  (Dkt. # 80.)  The Court modifies Judge Lane's findings on Giddy's CFAA, THACA, misappropriation, breach of fiduciary duty, breach of contract, and libel per se claims and adopts Judge Lane's findings on Giddy's conversion claim and on Jacobson's motion to strike.

## I.     CFAA and THACA

Judge Lane concluded that Giddy was entitled to summary judgment on its CFAA and THACA claims.  Kim's sole objection to Judge Lane's findings on these claims is that Giddy failed to prove damages because it "provided only

conclusory, general statements of nonspecific harm . . . ."  (Dkt. # 80 at 6.)  In support of its CFAA and THACA Giddy submitted the deposition testimony and declaration of Jacobson, Giddy's founder and CEO, that Kim deleted company data worth hundreds of thousands of dollars that cost "over $200,000 to recreate." (Dkt. ## 66-1 at 18, 66-4 ¶ 14.)  This figure is only a portion of the damages Jacobson estimates the company has suffered so far.  (See dkt. # 66-4 ¶ 16 (estimating total damages are $1.2 million dollars and that the number continues to grow)).  Jacobson's testimony describes the damage Giddy suffered and how that damage was caused by Kim's alleged data deletion.  (Dkt. # 66-4 ¶¶ 13–15.)  On the other hand, Kim stated in his declaration that he "did not transfer, delete[,] or hide any data, information[,] or company emails from Giddy" after his termination. (Dkt. # 68-1 ¶ 24.)

Witness credibility is not an issue to be resolved at the summary judgment stage.  See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 81 (5th Cir. 1987).  Thus, the Court will not determine the relative credibility of Kim's and Jacobson's testimony—such a determination is reserved for the fact finder.  Because there is conflicting testimony regarding whether Kim deleted files after his termination, summary judgment is not appropriate in favor of either party.  After reviewing the summary judgment evidence on Giddy's CFAA

and THACA claims de novo, the Court finds that summary judgment should be **DENIED**.

## II.      Breach of Contract and Libel per se

Giddy argues it is entitled to summary judgment on its breach of contract claim because Kim allegedly disparaged the company on Twitter after his termination.  Giddy claims it suffered damages as a result of this breach because an investor "pulled back $300,000 in funding due to [Kim's] Twitter comments and the potential consequences."  (Dkt. 66 at 14.)  Kim argues summary judgment would be improper because there is insufficient evidence that (1) he breached his contract with Giddy by disparaging it; and (2) his breach, if any, caused Giddy's $300,000 loss.  (Dkt. # 68 at 15–17.)  The Court agrees.

In its motion for summary judgment, Giddy claims "[i]t would be clear to anyone reading the tweets with knowledge of Defendant and who he worked for that Defendant was talking about Giddy."  (Dkt. # 66 at 15.)  But the only evidence Giddy submits in support of this claim is Jacobson's unsubstantiated testimony that some of Giddy's investors were troubled by the comments and that one investor withdrew funding. (Dkt. ## 66-1 at 4–5, 66-4 ¶ 17.)  This evidence is not sufficient to entitle Giddy to summary judgment.  See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence.").

While Giddy is correct that Kim's tweets need not identify Giddy by name, it is not clear from the evidence that those who "knew and were acquainted with" Giddy would know from Kim's tweets that he was referring to Giddy. See Newspapers, Inc. v. Matthews, 339 S.W.2d 890, 894 (1960) ("[I]t is not necessary that the individual referred to be named if those who knew and were acquainted with the plaintiff understand from reading the publication that it referred to plaintiff."). In short, there is a genuine dispute as to whether those familiar with Giddy would understand that it was the target of Kim's messages even though Kim did not mention the company's name.

Summary judgment in Giddy's favor is improper on its libel per se claim for the same reason it is improper on Giddy's breach of contract claim. Namely, there is a genuine issue of material fact regarding whether someone acquainted with Giddy would understand from Kim's tweets that he was talking about Giddy despite the fact that he did not mention the company by name. Thus, Giddy's motion for summary judgment on its breach of contract and libel per se claims is **DENIED**. The Court finds that neither party is entitled to summary judgment on those two claims.

### III.        Misappropriation and Breach of Fiduciary Duty

Kim argues Giddy is not entitled to summary judgment on its misappropriation and breach of fiduciary duty claims because Giddy failed to

"identify what trade secrets were misappropriated, how they were used by Kim, and how that caused specific harm" to Giddy.  (Dkt. # 80 at 13.)  Giddy claims it was harmed by Kim's alleged deletion of data and his "tweeting false accusations of fraud and discrimination."  (Dkt. # 66 at 16–17.)  Again, there is a factual dispute.

As the Court already discussed above, there is a genuine dispute regarding whether Kim deleted documents as Giddy suggests.  And the only evidence Giddy cites in support of its claim that investors withdrew funding because of Kim's tweets is Jacobson's deposition testimony that one investor's reason for withdrawing his investment was "[t]he Twitter comments and not knowing what the consequences of those would be" and Jacobson's declaration that "multiple potential and current Giddy investors reached out to [him] personally" reporting that they saw Kim's tweets.  (Dkt. ## 66-1 at 4–5, 66-4 ¶ 17.)  Because the Court finds that, should this evidence be admitted at trial, a rational trier of fact could choose not to believe Jacobson's testimony and conclude that the investor withdrew funding for another reason, summary judgment is not appropriate.  See Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (stating summary judgment is proper where a rational trier of fact could find only for the moving party).

After viewing the evidence in the light most favorable to Kim, as the Court must, it finds that Jacobson's unsubstantiated account of investors' reactions to Kim's comments is not enough to entitle Giddy to summary judgment on its misappropriation and breach of fiduciary duty claims.  And, as already discussed, there is a dispute surrounding Kim's alleged deletion of data.  Thus, summary judgment on these two claims is **DENIED**.

### IV.    Motion to Strike

As Judge Lane observed (and Kim concedes) this Court allowed Kim the opportunity to "amend his fraud claim to the extent it relates to the details of his termination . . . ."  (Dkt. # 61 at 14.)  Rather than addressing a fraud claim related to the details of his termination, Kim's second amended counterclaim deals exclusively with alleged fraud in the *hiring* process.  (Dkt. # 65 ¶¶ 36–51.) Because Kim's amended fraud claim goes beyond what he was granted leave of court to file, Jacobson's motion to strike is **GRANTED**.  Should Kim wish to refile an amended counterclaim, he must seek leave of court to do so.  Because the Court grants Jacobson's motion to strike, his alternative motion to compel arbitration is **MOOT**.

### V.    Conversion

No party timely objected to Judge Lane's conclusion that summary judgment should be granted in Kim's favor on Giddy's conversion claim.  Thus,

the Court reviews Judge Lane's findings on this claim only to determine if they are clearly erroneous or contrary to law.  Wilson, 864 F.2d at 1221.  Because the Court finds that Judge Lane's findings on Giddy's conversion claim are neither clearly erroneous nor contrary to law, the Court **ADOPTS** those findings and **GRANTS** summary judgment in Kim's favor on Giddy's conversion claim.

CONCLUSION

Except as otherwise **MODIFIED** in this Order, the Court **ADOPTS** the R&R as the opinion of the Court.  (Dkt. # 79.)  Kim's Motion for Summary Judgment is **DENIED IN PART AND GRANTED IN PART**—the motion is **GRANTED** on Giddy's conversion claim but is **DENIED** in all other respects. (Dkt. # 47.)  Giddy's Motion for Summary Judgment is **DENIED**.  (Dkt. # 66.) Jacobson's Motion to Strike Counterclaim or in the Alternative Motion to Compel Arbitration is **GRANTED IN PART AND DENIED AS MOOT IN PART**—the motion to strike is **GRANTED** and the motion to compel arbitration is **DENIED AS MOOT**.  (Dkt. # 67.)

**IT IS SO ORDERED**.

**DATED**:  Austin, Texas, March 30, 2022.

_____
David Alan Ezra
Senior United States District Judge

9